## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF PUERTO RICO

RUFINO MUÑIZ RIVERA, et al,
  Plaintiffs,

                                          Civil No. 98-2001 (HL)

v.

UNITED STATES OF AMERICA,
  Defendant.

### OPINION AND ORDER

     Before the Court is a motion to dismiss by the United States of America. Plaintiffs are home-owners residing in the La Margarita and Extensión La Margarita housing developments in Salinas, Puerto Rico.[1] There are 108 plaintiffs who own a total of 67 properties.[2] They bring this action against the Government pursuant to the Federal Tort Claims Act ("FTCA").[3]

     At the outset, the Court must determine what standard of review is required for this motion. The motion before the Court is a motion to dismiss for lack of subject matter jurisdiction which challenges the validity of the FTCA claim. Accordingly, the Court credits Plaintiffs' well-pleaded allegations in both the complaint and in the sworn statement

---

    [1] In their amended complaint, Plaintiffs state that they are bringing this claim as a class. They have not, however, moved for class certification pursuant to Rule 23. Accordingly, the Court treats this as a claim by a group of individual plaintiffs.

    [2] Docket no. 35. Pursuant to an earlier order, Plaintiffs appended to their amended complaint a list of all Plaintiffs with the corresponding date of purchase of each home and the dates that each individual filed administrative claims with the Government. It appears that Plaintiffs Pedro Colón and Ivonne Rodríguez own two properties: one which they purchased in 1978 and a second which they purchased in 1990.

    [3] 28 U.S.C.A. § 1346(b) (West 1993 & Supp. 2001) & §§ 2671 - 2680 (West 1994 & Supp. 2001).




Civil No. 98-2001 (HL)                     2

appended to their opposition to the Government's motion and draws all reasonable inferences in their favor. *See Valentin v. Hospital Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001).

Plaintiffs bought their homes between 1973 and 1995.[4] They purchased these homes with loans obtained through the federal Farmers Home Administration ("FmHA"), the U.S. Department of Agriculture, the Federal Housing Administration ("FHA"), and the Department of Housing and Urban Development. They allege that these homes were built in accordance with specifications approved by these federal agencies; that the sellers of the homes issued builder's warranties for the purpose of inducing these agencies to make loans for the purchase of the properties; that the deeds provided that the federal agencies had the right to inspect the properties; and that the plaintiffs were obligated to make repairs that the agencies requested and to obtain fire and earthquake insurance. The homeowners were obligated to obtain flood insurance only when the federal agencies so required it.

The two developments are located in the Nigua River "floodway zone." It has been the site of "major flooding" in 1928, 1933, 1956, 1970, 1975, 1985, 1992, and 1996. Flooding also occurred in the community in 1992, 1997, and 1998. Additionally, the sewer and drainage systems are inadequate: they back up when the river's level rises. As a result, Plaintiffs allege that their homes are subject to "substantial flooding" and soil movement; that their properties have sustained damage to their land as well as to the foundations, walls, roofs, and floors of their homes; and that this recurrent flooding makes the properties unfit for their intended use.

Plaintiffs claim that their damages were caused by the negligence of government agents. Specifically, they allege that these agents were negligent in their duty to inspect Plaintiffs' properties; that they were negligent in their duty to warn Plaintiffs of the area's

--------------------------------

[4] Docket no. 35.

Civil No. 98-2001 (HL)                    3

conditions; that they failed to inform Plaintiffs of the need for flood insurance; that they
failed to take measures to protect Plaintiffs' properties; that they were negligent in their
duty to supervise the construction of the homes; that they were negligent in their duty to
detect the developments' susceptibility to flooding and the inadequacies of the sewer and
drainage systems; that they were negligent in their duty to require or take measures to
protect Plaintiffs' properties from flood damages; and that they failed to build retaining
levees or take other appropriate measures to stop rising flood waters.

In its motion to dismiss, the Government argues that Plaintiffs' claims are time-
barred and that they are precluded by the misrepresentation and discretionary function
exceptions to the FTCA. Plaintiffs have opposed the motion to dismiss. For the reasons
set forth below, the Court grants the motion to dismiss.


## DISCUSSION

As the sovereign, the United States may not be sued without its consent. *Lehman v.
Nakshian*, 453 U.S. 156, 160, 101 S.Ct. 2698, 2701, 69 L.Ed.2d 548 (1981); *Day v. Mass.
Air Nat'l Guard*, 167 F.3d 678, 681 (1st Cir. 1999). The FTCA is a limited waiver of the
United States' sovereign immunity from liability. *Dynamic Image Technologies v. United
States*, 221 F.3d 34, 39 (1st Cir. 2000); *Day*, 167 F.3d at 681. The limits of that waiver
define a federal court's jurisdiction. *United States v. Mitchell*, 445 U.S. 535, 538, 100
S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980). It is a waiver, however, that must be strictly
construed in favor of the government. *Library of Congress v. Shaw*, 478 U.S. 310, 318,
106 S.Ct. 2957, 2963, 92 L.Ed.2d 250 (1986); *Ruckelshaus v. Sierra Club*, 463 U.S. 680,
685, 103 S.Ct. 3274, 3278, 77 L.Ed.2d 938 (1983); *Dynamic Image*, 221 F.3d at 39;
*Weldon v. United States*, 70 F.3d 1, 4 (2nd Cir. 1995). Under the FTCA, the government is
liable to the same extent that a private individual would be under similar circumstances in
accordance with the law of the place where the act occurred. 28 U.S.C.A. § 1346(b)(1);

Civil No. 98-2001 (HL)                4

*Abreu-Guzman v. Ford*, 241 F.3d 69, 75 (1st Cir. 2001); *Dynamic Image*, 221 F.3d at 39.

 The FTCA is replete with exceptions. *See* 28 U.S.C.A. § 2680. In its motion, the Government claims that it is protected by the exception which precludes claims of misrepresentation. *See id.* § 2680(h). The essence of a misrepresentation claim is that there be a "communication of misinformation" upon which the plaintiff has relied. *Block v. Neal*, 460 U.S. 289, 296, 103 S.Ct. 1089, 1093, 75 L.Ed.2d 67 (1983). The Government will not be liable for an injury resulting from a commercial decision made by plaintiff in reliance on a misrepresentation by a government agent. *Saraw Partnership v. United States*, 67 F.3d 567, 570 (5th Cir. 1995); *Jimenez-Nieves v. United States*, 682 F.2d 1, 4-5 (1st Cir. 1982). This exception applies to more than mere affirmative statements; a claim based on a failure to warn or to communicate will also be barred. *See JBP Acquisitions v. United States*, 224 F.3d 1260, 1265-66 (11th Cir. 2000); *Green v. United States*, 629 F.2d 581, 584-85 (9th Cir. 1980); *Preston v. United States*, 596 F.2d 232, 238-39 (7th Cir. 1979); *Mullens v. United States*, 785 F.Supp. 216, 219-20 (D.Me. 1992), *aff'd*, 976 F.2d 724 (1st Cir. 1992) (Unpublished table text); *Harrah v. Miller*, 558 F.Supp. 702, 706 (S.D.W.Va. 1983).

 In the present case, Plaintiffs' allege, among other things, that government agents were negligent (1) in their duty to warn Plaintiffs of the area's propensity to flooding and (2) in their failure to inform Plaintiffs of the need for flood insurance. These are claims, in effect, that the Plaintiffs suffered an injury because they relied on a communication of misinformation by government agents. That is, they bought their homes because they were never warned of any risk of flooding and they neglected to obtain adequate flood insurance because they were never told to do so. Even though Plaintiffs do not use the word "misrepresentation" in their allegations, these claims are still barred by that exception. In determining whether one of the FTCA exceptions comes into play, a court must look beyond the literal meaning of the complaint and ascertain the true nature of the cause of

Civil No. 98-2001 (HL)                5

action. *United States v. Neustadt*, 366 U.S. 696, 703-04, 81 S.Ct. 1294, 1297, 6 L.Ed.2d 614 (1961). The claims regarding the failure to warn of the risk of flood and the failure to advise Plaintiffs that they should obtain flood insurance are claims that Plaintiffs relied on a communication of misinformation and that as a result they suffered an injury. *See Mullens*, 785 F.Supp. at 219-20; *Harrah*, 558 F.Supp. at 706. Thus, they are barred by the misrepresentation exception.

Plaintiffs also assert that the Government is liable based on alleged negligence in the duty to inspect the properties and the duty to detect the problems in drainage, sewage, and flooding. The mere failure to inspect and detect, by itself, is not sufficient to impose liability. A negligent inspection could not have caused Plaintiffs' injuries, for any defects would already have been present in the houses. *See Hamre v. United States*, 799 F.2d 455, 457 (8th Cir. 1986). Any faulty inspection, therefore, must be accompanied by some other conduct sufficient to create liability. If Plaintiffs are arguing that government agents were negligent in inspecting the property <u>and</u> that they informed Plaintiffs that the property did not suffer from defects <u>and</u> that Plaintiffs purchased their homes in reliance on this information, then this claim is barred by the misrepresentation exception. *See Neustadt*, 366 U.S. at 704-07, 81 S.Ct. at 1299-1301; *Schneider v. United States*, 936 F.2d 956, 959-62 (7th Cir. 1991); *Farmers State Savings Bank v. Farmers Home Admin.*, 891 F.2d 200, 202 (8th Cir. 1989); *Bonuchi v. United States*, 827 F.2d 377, 379-80 (8th Cir. 1987); *Hamre*, 799 F.2d at 457; *Pritchett v. Milstid*, 891 F.Supp. 1541, 1547-48 (S.D.Ala. 1995); *Pennbank v. United States*, 599 F.Supp. 1573, 1581-82 (W.D.Pa. 1985), *aff'd on other grounds by* 779 F.2d 175 (3rd Cir. 1985); *Scott v. First Investment Corp.*, 556 F.Supp. 782, 785 (W.D.Pa. 1983).

If, however, Plaintiffs' allegation of negligence in inspection and detection is part of their claim that government agents were negligent in their supervision of the construction of their homes, the Court's analysis takes a different tack. A claim of negligence in the

Civil No. 98-2001 (HL)                    6

supervision of the construction of homes purchased with FHA or FmHA loans might be able to proceed under the FTCA. *See Block*, 460 U.S. at 296-99, 103 S.Ct. at 1093-95. In the consideration of this claim, it is important to underscore that the Government is liable under the FTCA to the same extent that a private person would be under similar circumstances in accordance with the law of the place where the act occurred. 28 U.S.C.A. § 1346(b)(1); *Abreu-Guzman*, 241 F.3d at 75; *Dynamic Image*, 221 F.3d at 39. There must be a relationship between the plaintiff and the government employee which would, under local law, impose a duty in a purely private sector setting. *Sea Air Shuttle Corp. v. United States*, 112 F.3d 532, 537 (1st Cir. 1997); *Zabala Clemente v. United States*, 567 F.2d 1140, 1143-44 (1st Cir. 1977). In their amended complaint, Plaintiffs refer to Article 1802 of the Puerto Rico Civil Code,[5] but in their opposition to the motion to dismiss they cite to no case that holds that under Article 1802 a private person lending money to a home-buyer is obliged to inspect and supervise the construction of the home that is to be purchased.[6] Thus, their reliance on Article 1802 is not sufficient to support their theory.

---

[5] 31 P.R. LAWS ANN. § 5141 (1991).

[6] Plaintiffs did cite to two Puerto Rico Supreme Court cases that dealt with a bank's liability for defects in homes that were purchased with a loan from that bank. *Amaro González v. First Fed. Savings Bank*, 132 P.R.Dec. 1042 (1993); *Chase Manhattan Bank v. Emmanuelli Bauzá*, 111 P.R.Dec. 708, 11 Official Translations 893 (1981). In *Chase*, the court held that there was no factual or legal support for a finding that the bank was a constructor or developer that could be liable for construction defects. 111 P.R.Dec. at 710-13, 11 Official Translations at 896-99. And in *Amaro González*, a group of homeowners in a housing development which had been built on heavily contaminated land sued the bank that had made the loans for the purchases of the homes. 132 P.R.Dec. at 1044. The Supreme Court held that the bank could be liable for its negligence in carrying out its banking functions if it financed the purchase of the homes even though it knew or should have known of the contamination. *Id.* at 1063.

In the present case, Plaintiffs' theory is based upon the Government's alleged

(continued...)

Civil No. 98-2001 (HL)                    7

*Cf. Zabala Clemente*, 567 F.2d at 1143 (noting that while the civil code's concept of fault may be broad, it does not seem to support a claim that it is tortious conduct to fail to inspect another person's property and warn that person of impending injury, unless there is some duty to the owner of the property).

That is not to say that the analysis ends here. Plaintiffs' claim is one based on an alleged breach of a regulatory or oversight duty for which private persons are not normally liable under local law. *See Sea Air*, 112 F.3d at 537. In other FTCA cases where the plaintiff has alleged that the government has breached a similar duty, courts have viewed the claim through the prism of the Good Samaritan doctrine. *See, e.g., Indian Towing Co. v. United States*, 350 U.S. 61, 64-69, 76 S.Ct. 122, 124-27, 100 L.Ed. 48 (1955); *Johnson v. Sawyer*, 47 F.3d 716, 728 (5th Cir. 1995); *Howell v. United States*, 932 F.2d 915, 918 n.3 (11th Cir. 1991) (collecting cases); *Moody v. United States*, 774 F.2d 150, 155 n.6 (6th Cir. 1985); *Zabala Clemente*, 567 F.2d at 1145; *Mr. (Vega Alta), Inc. v. Caribe Gen. Elec. Products*, 31 F.Supp.2d 226, 237 (D.P.R. 1998); *Kirk v. United States*, 604 F.Supp. 1474, 1480-84 (D.N.H. 1985). Under this doctrine, when a party – in this case, the Government – gratuitously undertakes to perform a service upon which the plaintiff justifiably relies, the Government will have a duty to perform that service with an appropriate standard of care. The Government will be liable if it failed to exercise reasonable care in the performance of this duty and if the plaintiff justifiably relied on this performance to his or her detriment. *Indian Towing*, 350 U.S. at 69, 76 S.Ct. at 126-27; Restatement (Second) of Torts §§ 323 & 324A (1965). As Plaintiffs acknowledge in their opposition to the motion

---

[6](...continued)
negligence in supervising and overseeing the construction of their homes. The Supreme Court in *Amaro González* did not rule that the bank could be liable under a similar theory. Thus, even if the Court were to assume that the ruling in *Amaro González* could make a private person liable under Puerto Rico law, that case's holding does not support the Plaintiffs' cause of action in the present case.

Civil No. 98-2001 (HL)                    8

to dismiss, the Puerto Rico Supreme Court has recognized this doctrine.[7]  *See Piñeiro*

*Manzano v. Estado Libre Asociado*, 102 P.R.Dec. 795, 801-02, 2 Official Translations

1028, 1036 (1974).

    In the present case, the Government could be liable if it had voluntarily assumed a

duty to supervise or oversee the construction of Plaintiffs' homes.  Courts in earlier cases

have found that such a duty existed based on government regulations which required

FmHA or FHA agents to supervise and inspect the construction of homes that were to be

purchased with Government-backed loans.[8]  *See Neal v. Bergland*, 646 F.2d 1178, 1180-84

(6th Cir. 1981), *aff'd sub nom. Block v. Neal*, 460 U.S. 289, 103 S.Ct. 1089, 75 L.Ed.2d 67

(1983);  *Kirk*, 604 F.Supp. at 1479-81;  *Park v. United States*, 517 F.Supp. 970, 974-75,

977-78 (D.Or. 1981).

    The force of these government regulations does not support the claims of all

---

[7] Docket 54, at 5.  Plaintiffs also cite to two cases on this doctrine.  *See Carrasquillo v. Am. Missionary Assoc.*, 61 P.R.R. 837 (1943); *Chapman v. E.S.J. Towers, Inc.*, 803 F.Supp. 571 (D.P.R. 1992).  These cases are not what the Restatement would consider to be good samaritan cases.  *Carrasquillo* involved a claim that a hospital was negligent in its treatment of a newborn baby.  61 P.R.R. at 839.  In *Chapman* the plaintiff was a hotel guest who was injured by criminals that entered the hotel premises.  He claimed that defendant was negligent in failing to ensure the safety of the premises.  803 F.Supp. at 572-73.  These cases did not discuss whether the defendant was liable because it had gratuitously undertaken to perform a service upon which the plaintiff had detrimentally relied.

[8] Generally, a government agent's breach of a federal regulatory duty will not be, by itself, sufficient to give rise to a FTCA negligence claim.  *Sea Air*, 112 F.3d at 536; *Johnson*, 47 F.3d at 727-28; *Art Metal-U.S.A., Inc. v. United States*, 753 F.2d 1151, 1157-58 (D.C.Cir. 1985); *Schindler v. United States*, 661 F.2d 552, 560 (6th Cir. 1981).  The regulations may, however, create duties which could subject the Government to liability under local tort law for a breach of those duties.  *Johnson*, 47 F.3d at 728; *Moody*, 774 F.2d at 156 n.8;  *Art Metal-U.S.A.*, 753 F.2d at 1158-59;  *Sellfors v. United States*, 697 F.2d 1362, 1367 (11th Cir. 1983);  *Schindler*, 661 F.2d at 560;  *Mr. (Vega Alta)*, 31 F.Supp.2d at 237.

Civil No. 98-2001 (HL)                    9

Plaintiffs in the present action.  This is due to the fact that the relevant regulations were amended, effective June 12, 1980.  *See* 45 Fed. Reg. 39,789 & 39,803 (1980) (codified at 7 C.F.R. pt. 1924).  The amended regulations state that the individual borrower is responsible for making any inspections necessary to protect his interest; that the Government inspections are not intended to assure the borrower that the house is being built in accordance with any plans or specifications; that "[t]he inspections create or imply *no duty or obligation* to the particular borrower;" and that "[t]he Borrower should make enough periodic visits to the site to be familiar with the progress and performance of the work, in order to protect the borrower's interest."  7 C.F.R. § 1924.9(a) & (b)(5) (2001) (emphasis added).  In the wake of these amendments, it cannot be held that the Government has voluntarily undertaken a duty to supervise or inspect the construction of the homes or that the borrowers could reasonably rely on the Government's inspection or supervision of the constructions.  *See Moody*, 774 F.2d at 156-57; *Cash v. United States*, 571 F.Supp. 513, 515-16 (N.D.Ga. 1983).  In the present case, twenty-one of the properties were purchased after the new regulations took effect on June 12, 1980.  Because of the changes in the regulations, the Government did not owe these purchasers a duty to supervise or inspect their homes, and these purchasers were therefore not justified in relying on any Government inspection or supervision.  Accordingly, the Court dismisses the claims of these owners.

There remain, then, the claims of those Plaintiffs who purchased their homes prior to June 12, 1980.  The Government argues that these claims are time-barred.[9]  This issue goes to the question of the Court's jurisdiction to hear this suit.  *Gonzalez v. United States*,

---

[9] The Government argues in its motion to dismiss that all the Plaintiffs' claims are time-barred.  However, because the Court dismisses the claims of those individuals who purchased their properties after June 12, 1980, on other grounds, it applies the timeliness analysis only to those Plaintiffs who purchased their properties before June 12, 1980.

Civil No. 98-2001 (HL)                    10

284 F.3d 281, 288 (1st Cir. 2002).  An FTCA claim will be time-barred unless the plaintiff

has filed an administrative claim with the appropriate government agency within two years

of the tort's accrual.  28 U.S.C.A. § 2401(b) (West 1994); *Coska v. United States*, 114 F.3d

319, 322 (1st Cir. 1997).  Of the remaining Plaintiffs, the owners of forty-five of the

properties filed administrative claims on both February 26, 1998, and February 29, 2000;

the other owner filed only one claim, on February 29, 2000.[10]  It is unclear, but it appears

that Plaintiffs filed two sets of administrative claims because they are basing their cause of

action on the flooding which occurred in 1996 and 1998.

        Plaintiffs' administrative claims will be timely only if their tort claims accrued as of

February 26, 1996, and February 28, 1998.  The accrual date of a FTCA claim is a question

of federal law.  *Bartleson v. United States*, 96 F.3d 1270, 1276 (9th Cir. 1996); *Miller v.*

*United States*, 932 F.3d 301, 303 (4th Cir. 1991).  Generally, a tort claim accrues at the

time of the injury.  *Gonzalez*, 284 F.3d at 288; *Attallah v. United States*, 955 F.2d 776, 779

(1st Cir. 1992).  If an injury and its cause are not immediately apparent, the claim will

accrue either at the time the plaintiff discovers his injury or at the time the plaintiff, in the

exercise of reasonable diligence, could have discovered it.  *Attallah*, 955 F.2d at 780.

        As mentioned above, Plaintiffs appear to be bringing claims for flooding which

occurred in 1996 and 1998.  The problem with these claims is that the properties were

purchased in 1980 or before.  The alleged tortious government conduct would have

occurred at the time of purchase – eighteen years or more prior to the filing of the

administrative claims.  Between the time Plaintiffs purchased their homes and the time of

the 1996 flooding, the properties had already been flooded on a number of earlier

occasions.  In their amended complaint, Plaintiffs allege that major flooding occurred in

1975, 1985, and 1992.  The Government argues that therefore Plaintiffs knew, or should

---

[10] Docket no. 35.

Civil No. 98-2001 (HL)                    11

have known, of their injury by 1992, and that their administrative claims filed in 1998 and 2000 are untimely.

Plaintiffs raise a series of arguments to counter the Government's reasoning. In one of them, Plaintiffs rely on the jurisprudence regarding accrual in cases that involved government takings of a continual nature.[11] *See United States v. Dickinson*, 331 U.S. 745, 67 S.Ct. 1382, 91 L.Ed. 1789 (1947); *Applegate v. United States*, 25 F.3d 1579 (Fed. Cir. 1994); *Cooper v. United States*, 827 F.2d 762 (Fed. Cir. 1987). The plaintiffs in those cases brought Fifth Amendment claims for what they alleged were the takings of their properties. The issue there was when the takings claim accrued. The Supreme Court in *Dickinson* held that when the taking is caused by a continuous process, it is not complete, for purposes of determining when the claim arose, "until the situation becomes stabilized." 331 U.S. at 749, 67 S.Ct. at 1385. The present case, however, does not involve a taking of Plaintiffs' properties; rather it involves a claim for tortious conduct. The question here is when a tort occurred, not when a takings occurred. Therefore, the Court need not consider the takings cases cited by Plaintiffs.

Plaintiffs also argue that their claims are timely owing to the continuous nature of the flooding. This argument obfuscates the distinction between a continuing act and a single act that "'brings continuing consequences in its roiled wake.'" *Johnson v. Rodriguez*, 943 F.2d 104, 108 (1st Cir. 1991) (quoting *Gilbert v. City of Cambridge*, 932 F.2d 51, 58-59 (1st Cir. 1991)). An accrual date may be delayed if a plaintiff has suffered a continuing tort or a continuing violation. A continuing violation occurs when there is a series of continual unlawful acts, not when there are merely continual harmful effects from an original unlawful act. *Nesovic v. United States*, 71 F.3d 776, 778 (9th Cir. 1995);

---

[11] In their opposition to the motion to dismiss, Plaintiffs incorporated their arguments from an earlier opposition. Docket no. 54, at 8 n.2; docket no. 26. Accordingly, the Court considers the arguments Plaintiffs have raised in both their oppositions.

Civil No. 98-2001 (HL)                    12

*Diliberti v. United States*, 817 F.2d 1259, 1264 (7th Cir. 1987); *Bergman v. United States*, 751 F.2d 314, 316-17 (10th Cir. 1984); *Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir. 1981); *Lazarini v. United States*, 898 F.Supp. 40, 45 (D.P.R. 1995), *aff'd* 89 F.3d 823 (1st Cir. 1996) (Unpublished table text); *see also O'Rourke v. City of Providence*, 235 F.3d 713, 730 (1st Cir. 2001); *Rodriguez Montalvo v. Municipality of Arecibo*, 30 F.Supp.2d 118, 121 (D.P.R. 1998). When there is a continuing tort, the cause of action accrues when the tortious conduct ceases. *Page v. United States*, 729 F.2d 818, 821-22 (D.C.Cir. 1984); *Maslauskas v. United States*, 583 F.Supp. 349, 351 (D.Mass. 1984).

In the present case, Plaintiffs allege that Government agents were negligent in supervising and overseeing the construction of their homes. This alleged tortious conduct would have been completed at the time of the purchase of the homes. Plaintiffs may suffer the effects of this negligence every time flooding occurs in their housing development. This does not mean, however, that their claim is one for a continuous tort. They do not allege that Government agents committed a series of ongoing violations. Rather, Plaintiffs are suffering the continual injurious consequences of alleged tortious conduct which has long since ceased. *See Johnson*, 943 F.2d at 108; *Ward*, 650 F.2d at 1147. To hold otherwise would be to start a new statute of limitations every time a flood occurred. *See Harrell v. Fleming*, 285 F.3d 1292, 1293 (10th Cir. 2002); *Bowyer v. United States Dep't of Air Force*, 875 F.2d 632, 638-39 (7th Cir. 1989); *Bergman*, 751 F.2d at 317. This the Court cannot do.

There remains the issue of when these claims accrued. The alleged tortious conduct would have ceased at the time that Plaintiffs purchased their homes. At that time, however, there had been no flooding. Thus, Plaintiffs had not yet suffered any injury. In 1975, 1985, and 1992 their properties were flooded. By this third flood they should have known that they had suffered an injury. Therefore, their claims appear to be time-barred.

Plaintiffs claim that the accrual of their claims should be tolled pursuant to the

Civil No. 98-2001 (HL)              13

discovery rule.[12]  Under this rule, a claim will accrue "when the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the factual basis of the cause of action." *Gonzalez*, 284 F.3d at 288; *Attallah*, 955 F.2d at 780.  This is an objective standard.  For there to be a tolling of the statute of limitations pursuant to the discovery rule, the factual basis for plaintiff's case must have been "'inherently unknowable'" at the time of his injury. *Gonzalez*, 284 F.3d at 288-89 (quoting *Attallah*, 955 F.2d at 780).

Once a plaintiff knows of an injury and its probable causes, it becomes incumbent upon him to make the necessary inquiries to determine whether he has a cause of action. *United States v. Kubrick*, 444 U.S. 111, 123, 100 S.Ct. 352, 360, 62 L.Ed.2d 259 (1979); *Gonzalez*, 284 F.3d at 289.  The limitations period will begin to run regardless of whether a plaintiff has made these inquiries. *Gonzalez*, 284 F.3d at 289.  Furthermore, the statute of limitations will begin to run even though the plaintiff may not know all of the relevant facts pertaining to his claim. *Gonzalez*, 284 F.3d at 289; *see also Morris v. Gov't Dev. Bank of Puerto Rico*, 27 F.3d 746, 750 (1st Cir. 1994).

In the present case, Plaintiffs argue in their opposition that they did not immediately realize that their housing development was subject to continual flooding.  This argument is belied by their amended complaint in which they allege that their houses are in what has been, since 1928, a "known flood area" and that major floods occurred there in 1928, 1933, 1956, 1970, 1975, 1985, 1992, and 1996.[13]  These Plaintiffs would have suffered injuries caused by the flooding in 1975, 1985, and 1992.  By 1992 they should have known, with the exercise of reasonable diligence, that they had suffered an injury and that they had a

---

[12] In their discussion of the discovery rule, Plaintiffs cite to jurisprudence from Puerto Rico and Louisiana local courts.  The question of accrual in FTCA claims, however, is one of federal law. *Bartleson*, 96 F.3d at 1276.  Thus, the authorities cited by Plaintiffs are inapposite.

[13] Docket no. 35, at 6.

Civil No. 98-2001 (HL)                14

cause of action. Plaintiffs have appended to their opposition a sworn statement from
Jeanette Perez Maceira, one of the plaintiffs. In it, she avers that Plaintiffs did not become
aware that flooding was a recurrent problem until September 1996. There is no
explanation, either in this sworn statement or in the briefs why they could not have made
this discovery sooner.

In her sworn statement, Perez Maceira refers to an Army Corps of Engineers report
that was issued in September 1996 which found that flooding was a recurrent problem in
the area. If this report is how Plaintiffs first learned of the continuing nature of the
problem, it would be insufficient to allow them to invoke the discovery rule. First, the
floods of 1975, 1985, and 1992 should have put Plaintiffs on notice of a problem. Second,
it was incumbent upon Plaintiffs, not the Army Corps of Engineers, to make the necessary
inquiries to determine what was the cause of this problem and whether they had a viable
cause of action. *See Kubrick*, 444 U.S. at 123, 100 S.Ct. at 360; *Gonzalez*, 284 F.3d at
289. The limitations period on their claims began to run regardless of whether they made
these inquiries. *See Gonzalez*, 284 F.3d at 289. Plaintiffs' argument that they were
somehow unable to discover their cause of action earlier is unsupported and therefore
unavailing.

Plaintiffs offer another argument: that the limitations period should have been tolled
because of Government assurances that it would take measures to prevent the flooding.
The Court reads this argument to be one invoking the equitable estoppel doctrine. Under
equitable estoppel, the Government is estopped from raising a statute of limitations defense
when the plaintiff's untimeliness is due to his justified reliance on the Government's false
or misleading statements or conduct. *Berman v. United States*, 264 F.3d 16, 20 (1st Cir.
2001); *see also Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 457-58,
112 L.Ed.2d 435 (1990). For there to be equitable estoppel, there must be some
affirmative government misconduct. *Dantran, Inc. v. United States Dep't of Labor*, 171

F.3d 58, 67 (1st Cir. 1999); *Frillz, Inc. v. Lader*, 104 F.3d 515, 518 (1st Cir. 1997); *Bell v. Fowler*, 99 F.3d 262, 268-69 (8th Cir. 1996); *Dring v. McDonnel Douglas Corp.*, 58 F.3d 1323, 1329 (8th Cir. 1995). The defendant must have acted with an improper purpose, or it must have had constructive knowledge of the deceptive nature of its conduct. *Kale v. Combined Ins. Co.*, 861 F.2d 746, 752 (1st Cir. 1988).

In the present case, Plaintiffs' claim that they did not pursue their claims more aggressively because federal government agencies had made assurances that they intended to implement flood control measures. The assurances upon which Plaintiffs claim to have relied are the following: in 1990 the Government issued a "Reconnaissance Report" recommending unspecified measures to control the flooding; after the 1992 flood, Plaintiffs were informed that improvements were planned according to this 1990 report; and in 1996 a "final Feasibility Report for flood control" was published by the Army Corps of Engineers.[14] Plaintiffs further assert that there have been constant delays and snags in the implementation of these plans.

This government action is not sufficient to warrant equitable relief from the limitations provisions of the FTCA. First, there is no allegation of specific Government promises or guarantees that it would correct the flooding problem. Plaintiffs mention only reports which recommended that unspecified measures be taken or assurances that unspecified steps were being planned. At most, this conduct indicated that government officials were aware of this problem and were attempting to address it. There were, however, no promises on which Plaintiffs could have justifiably relied. Moreover, there is no evidence or allegation that the Government's statements and reports regarding the flooding were motivated by an intent to deceive or mislead Plaintiffs. There is absolutely no indication of affirmative government misconduct. Thus, there is no support for a claim

---

[14] Docket no. 26, at 9-10; docket no. 54, sworn statement of Jeanette Perez Maceira.

Civil No. 98-2001 (HL)                    16

of equitable estoppel. It appears that bureaucratic inefficiencies or institutional inertia has resulted in a less than swift government reaction to Plaintiffs' plight. Although this is certainly lamentable, it is not sufficient to justify estopping the Government from raising a statute of limitations defense.[15]

Based on all of the above, therefore, the Court finds that Plaintiffs who purchased their homes prior to June 12, 1980, should have known by the time of the 1992 flood of the factual bases of their FTCA causes of action. They did not file their first set of administrative claims until 1998. Thus, their claims for negligence in the supervision and oversight of the construction of their homes are time-barred.

Lastly, Plaintiffs also bring a claim based on the Government's alleged failure to take appropriate measures, such as building retaining levees, to stop rising flood waters.[16] This appears to be a claim not against those Government agents who administered the loan programs, but against the employees of those agencies charged with preventing floods. Presumably, this is a claim against the Army Corps of Engineers. *See* 33 U.S.C.A. § 540 (West 2001) ("Federal investigations and improvements of rivers, harbors and other waterways shall be under the jurisdiction of and shall be prosecuted by the Department of the Army under the direction of the Secretary of the Army and the supervision of the Chief

---

[15] Although not expressly invoked by Plaintiffs, the equitable tolling doctrine may also be used to avoid the statute of limitations. Equitable tolling will be justified when the plaintiff could not have discovered, even in the exercise of reasonable diligence, facts essential to his claim. *Gonzalez*, 284 F.3d at 291. The circumstances that caused the plaintiff to miss a deadline must have been entirely out of his hands. *Id.* The Court's treatment above of the discovery rule is equally applicable here. Nothing in the record establishes that there were circumstances beyond Plaintiffs' control which prevented them, in the exercise of reasonable diligence, from discovering earlier the facts essential to their claim. Therefore, the equitable tolling doctrine provides no succor to Plaintiffs' claim.

[16] Docket no. 35, ¶ 25.

Civil No. 98-2001 (HL)                    17

of Engineers . . . ."); *Devito v. United States*, 12 F.Supp.2d 269, 270 (E.D.N.Y. 1998).  The Government does not address this claim in its motion to dismiss.  Thus, this claim remains.

The Court notes, however, that this claim is not without its obstacles.  For this claim to proceed, Plaintiffs must have presented a timely administrative claim with the appropriate federal agency.  *See* 28 U.S.C.A. § 2401(b).  Furthermore, it may be barred by the discretionary exception of 28 U.S.C.A. 2680(a).  *See E.Ritter & Co. v. Dep't of Army, Corps of Eng'rs*, 874 F.2d 1236, 1241 (8th Cir. 1989).  Also, it may be barred by other statutory provisions which provide the Government with immunity in such situations.  *See* 33 U.S.C.A. § 702c (West 2001) ("No liability of any kind shall attach to or rest upon the United States for any damage from or by floods or flood waters at any place.").  As the Government has not addressed this claim in its motion to dismiss, the Court makes no ruling now on the viability of this last claim.

WHEREFORE, the Court **grants** the motion to dismiss (docket no. 50).

**IT IS SO ORDERED.**

San Juan, Puerto Rico, May 2 0, 2002.

HECTOR M. LAFFITTE
Chief U.S. District Judge